[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. FACTS
Jeylan B. was born on December 8, 1998 to Amy B. and Surku B. Surku B. has returned to his native country, Turkey. The Court finds that he was served with the Petition and Notice of Hearing by registered mail in Turkey, for which he acknowledged receipt. The Court, therefore, enters a default judgement against Respondent Father for his failure to appear at the court hearings.
On February 3, 2000 the Court (Carroll, J.) granted an exparte order of temporary custody to the Petitioner on behalf of the above-named minor child. On February 3, 2000 the Petitioner filed a neglect petition on behalf of the above-named minor child alleging that the child is: neglected in that the child is being denied proper care and attention physically, educationally, emotionally or morally; and that the child is being permitted to live under conditions, circumstances or associations injurious to well being. Specific steps were signed by Respondent Mother and Court ordered on February 3, 2000. The adjudicatory date for the neglect petition is February 3, 2000. Any facts considered after February 3, 2000 are admissible for dispositional purposes only. CT Page 7509
On February 9, 2000 the Court (Eveleigh, J.) upheld the order of temporary custody without prejudice to the Respondent parents. On March 7, 2000 the Court granted the Petitioner's Motion to Consolidate the Order of Temporary Custody and the Neglect Petition. On that date the Court took Judicial Notice of the Court file. On March 17, 2000 and March 27, 2000 a trial was conducted on the Order of Temporary Custody and Neglect issues
Jeylan B. was hospitalized in December, 1999 after suffering a seizure accompanied by a temperature of 104 degrees. The mother had moved into an apartment with no heat or utilities. The baby had not received its proper immunization shots. The child was staying with babysitters who were unable to contact the mother other than at mother's place of employment. Respondent Mother's spoken language is Vietnamese. The babysitters did not speak English, as their spoken language is Spanish. The babysitters had no birth certificate and no authorization from the parents to secure medical treatment of Jeylan.
Jeylan was hospitalized again on February 1, 2000 for a severe sinus infection. At that time the hospital identified a bump on Jeylan's head that Respondent Mother indicated was five days old and resulted from Jeylan falling off a kitchen table. Respondent Mother admitted that she was aware of Jeylan's head injury when it occurred and did not seek medical attention. Respondent Mother admitted that she knowingly failed to take Jeylan for immunizations. She also left Jeylan with a babysitter in a home that she described as dirty and where she felt Jeylan was not fed enough.
Respondent Mother has been employed in various nail salons in the City of Danbury as well as the City of Waterbury.
II. LAW
Pursuant to C.G.S. Section 46B-120 et. seq. A child may be found "neglected" if that child is being denied proper care and attention physically, educationally, emotionally or morally, or is being permitted to live under conditions, circumstances or associations injurious to her well-being. The standard of proof is by a fail preponderance of the evidence, which must be established by the Department of Children and Families. Darrow vs. Fleishchner, 117 Conn. 518, 169 A, 147 (1933).
The Court finds that the evidence in this matter establishes by a clear preponderance of the evidence that Jeylan B. was neglected in that the child was denied proper care and attention physically. Jeylan did not have the proper immunization shots and was not taken to the CT Page 7510 hospital when she was injured. When asked why she did not take her child to the hospital Respondent Mother responded that she was told that the State could take her baby away. In that regard, her own personal concern was placed above the child's health. In addition, the babysitter had no authorization for medical treatment and did not have sufficient means to contact the mother in case of an emergency.
There is no question that the mother's language has complicated communication between DCF and Respondent Mother. The lack of a common language also complicated matters between the mother and the babysitters.
Amy B. is currently residing in Waterbury, CT, where she has lived since February, 2000. She has paid rent in a timely fashion and has paid for her utilities. The landlord testified that the heat and electricity have never been shut off. She has been steadily employed full time, five days per week, at a Nail Studio located in Waterbury. Her hours are flexible and can be arranged around daycare. She is willing to place her child in a licensed daycare facility. The mother has agreed to file an application for financial assistance from the State. The landlord testified that he does not have an issue with a child staying in the mother's current apartment.
In the case of In Re Juvenile Appeal, 177 Conn. 648 (1979) the Supreme Court enumerated the factors to be considered in an effort to determine what is in a child's best interest. The factors to be considered in making this assessment include: (1) the length of stay with a non-parent; (2) the nature of the relationship to the non-parent; (3) the degree of contact maintained with the natural parent; and (4) the nature of the relationship with the natural parent. The Court finds that the respondent mother is devoted to her child. It was necessary to leave the child with babysitters in order to support her family because the father was absent. She maintained contact with her child except for her work situation. The mother's difficulty in speaking English, and her fear of losing her child, caused her to be neglectful of the child. However, the Court is satisfied that, with a period of protective supervision, the neglectful events as stated above, will not reoccur.
III. CONCLUSION
Based upon the foregoing, the Court finds that, by a fair preponderance of the evidence, Jeylan B. as of February 3, 2000, was a neglected child by both Respondents. The Court further finds that Respondent Mother has secured suitable housing and maintained employment. The Court finds that, by a fair preponderance of the evidence there is no longer a continuing need for the child to be in foster care. CT Page 7511
Wherefore, the court orders that the Order of Temporary Custody be vacated and the commitment to DCF revoked, and the child be returned to the custody and guardianship of her mother. The Court finds that it is in the child's best interest to return her immediately to her mother. The Court further orders that there be a period of three months Protective Supervision by the Department of Children and Families. The Department is ordered to assist Respondent Mother with the following conditions during the Protective Supervision:
 1. Respondent Mother must enroll Jeylan in a licensed childcare facility where she is to remain while mother is working.
 2. Mother must provide the childcare facility with telephone numbers where she can be reached at all times.
 3. Mother must apply for State Assistance to assure that her child is adequately insured.
 4. Mother must take child to a doctor to insure that all immunizations are up to date, and a doctor-patient relationship is established.
By The Court
Dennis Eveleigh, J.